[No. B181756. Second Dist., Div. Seven. Oct. 3, 2006.]

LEONARD E. ARON, Plaintiff and Appellant, v.
U-HAUL COMPANY OF CALIFORNIA et al., Defendants and
Respondents.

## COUNSEL

Harold J. Tomin; Billet, Kaplan & Dawley, Jerome S. Billet and Gregory A. Dawley for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Thomas J. Greene, Chief Assistant Attorney General, Albert Norman Shelden, Assistant Attorney General, Ronald A. Reiter and Paul Stein, Deputy Attorneys General, as Amici Curiae on behalf of Plaintiff and Appellant.

Fulbright & Jaworski, James R. Evans, Jr., and Joseph H. Park for Defendants and Respondents.

## OPINION

ZELON, J.—Leonard E. Aron appeals from a judgment on the pleadings in favor of U-Haul Company of California and U-Haul International, Inc., in his consumer class action alleging that U-Haul's refueling charges and practices violate the California Consumers Legal Remedies Act, Civil Code[1] section 1750 et seq. (CLRA) and the California unfair competition law, Business and Professions Code section 17200 et seq. (UCL). We conclude that Aron has alleged facts sufficient to state a cause of action under the UCL and section 1770, subdivision (a)(5) of the CLRA. Accordingly, we reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *U-Haul's Refueling System*

U-Haul Company of California and U-Haul International, Inc. (U-Haul), rent trucks to customers. Rather than supplying those customers with fully fueled trucks, U-Haul rents its trucks partially fueled, presenting them to each succeeding customer with the fuel remaining when the previous customer returned the vehicle. The level of the fuel gauge is the exclusive means of measurement relied on. If on return, the fuel gauge is lower than at rental,

---

[1] All further statutory references are to the Civil Code, unless otherwise noted.

U-Haul charges the customer a $20 fueling fee as well as $2 per gallon for fuel estimated to have been used, but not replaced, by the customer. U-Haul does not reimburse customers for additional fuel if a truck is returned with more fuel than initially provided.

The rental contract sets out these two options explicitly: "I confirm equipment is clean and agree to pay for all fuel used and return the truck with the same fuel gauge reading as indicated on this rental contract and will pay $20 fueling fee plus $2 per gallon for estimated fuel used. U-Haul does not reimburse for excess fuel purchased by the customer."

"EZ-FUEL™ AGREEMENT: Customer agrees to pay for all fuel used and return the truck with the same amount of fuel as when rented or pay a $20 fee and $2 per gallon for fuel used."

"Customer must return the truck with the same fuel-gauge reading as indicated on rental contract or pay a $20 fee and $2 per gallon for fuel used."

"I agree to return the van with the same fuel level as indicated on rental contract or pay a $20 fee and $2 per gallon for estimated fuel used."

"Customer agrees to pay for all fuel used and return the truck with the same amount of fuel as when rented or pay a $20 fee and $2 per gallon for fuel used. U-HAUL does not reimburse for excess fuel purchased by customer."

### 2. Aron's Class Action Complaint

On October 6, 2003, plaintiff and appellant Leonard E. Aron (Aron) rented a truck from U-Haul, signing the rental contract. Aron noted that the fuel gauge showed the tank was less than half full. Aron refueled the truck twice during the rental period and returned the vehicle with more fuel than he was provided. Upon returning the truck to U-Haul, Aron asked for credit or reimbursement for the excess fuel but was refused.

On April 27, 2004, Aron filed a class action complaint on behalf of all persons who, within the four years preceding the filing of the complaint, had entered into a truck rental contract with U-Haul in California and paid a $20 fueling fee; paid for fuel based on the amount of fuel measured by the rented truck's fuel gauge; or returned the rented truck to U-Haul with more fuel in the tank than at the initiation of the rental. In his first cause of action, Aron alleged that U-Haul's refueling practices violate the UCL, and specifically, Aron claimed that U-Haul's practice of charging customers a $20 "fueling fee" and a $2 per gallon fee for fuel used but not replaced is deceptive,

unfair, and unconscionable; U-Haul's practice of refusing to reimburse consumers for excess fuel is unfair; and U-Haul's use of the inaccurate fuel gauge to measure fuel for commercial sale is illegal, unfair, and fraudulent. In his second cause of action, Aron alleged that U-Haul's deceptive refueling practices violate the CRLA, sections 1770, subdivision (a)(4), 1770, subdivision (a)(5), and 1770, subdivision (a)(19); specifically, Aron claimed that U-Haul deceptively represents its fueling fees, misrepresents its fueling fees as having characteristics, uses, benefits, or quantities that they do not have, and levies unconscionable fueling charges.

U-Haul answered the complaint on October 15, 2004.

### 3. *U-Haul's Motion for Judgment on the Pleadings*

On November 22, 2004, U-Haul filed a motion for judgment on the pleadings, which was granted on December 28, 2004. The court entered judgment on January 4, 2005. Aron timely appealed on February 24, 2005.

## DISCUSSION

### A. *Standard of Review*

We review the trial court's ruling on a motion for judgment on the pleadings de novo and decide independently whether the complaint states facts sufficient to constitute a cause of action, accepting the allegations as true and liberally construed in plaintiff's favor. (See *Shea Homes Limited Partnership v. County of Alameda* (2003) 110 Cal.App.4th 1246, 1254 [2 Cal.Rptr.3d 739]; *Heredia v. Farmers Ins. Exchange* (1991) 228 Cal.App.3d 1345, 1358–1359 [279 Cal.Rptr. 511].)

### B. *Aron Has Standing to File a Complaint Under the UCL and the CLRA*

■ To have standing to assert a claim under the UCL, a plaintiff must have "suffered injury in fact and [have] lost money or property as a result of such unfair competition." (Bus. & Prof. Code, § 17204; see also *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 227 [46 Cal.Rptr.3d 57, 138 P.3d 207] [holding that Proposition 64 applies to pending cases].) ■ To have standing to assert a claim under the CLRA, a plaintiff must have "suffer[ed] any damage as a result of the . . . practice declared to be unlawful." (§ 1780, subd. (a).)

Aron alleges "injury in fact" in that he suffered economic loss by being required to purchase excess fuel, because there was no accurate measuring

device to determine the actual amount required to return the truck at its rental fuel level. Therefore, the only way to avoid the imposition of U-Haul's charge was to overfill the fuel tank. He further alleges that the use of the fuel gauge as the instrument of measurement is neither accurate nor in accordance with California law regarding weights and measurements. Because the allegations set forth a basis for a claim of actual economic injury as a result of an unfair and illegal business practice, Aron has standing.

### C. *U-Haul Is Not Protected by the "Safe Harbor" Provision of Section 1936, Subdivision (n)(2)*

U-Haul asserts that the Legislature has expressly authorized its challenged practices. It relies on section 1936, subdivision (n)(2), which provides: "[A] rental company may charge for an item or service provided in connection with a particular rental transaction if the renter could have avoided incurring the charge by choosing not to obtain or utilize the optional item or service. Items and services for which the rental company may impose an additional charge, include . . . charges for refueling the vehicle at the conclusion of the rental transaction in the event the renter did not return the vehicle with as much fuel as was in the fuel tank at the beginning of the rental." U-Haul asserts that this section both applies to it, and provides a "safe harbor" for its practices; U-Haul is incorrect.

The scope of the UCL is broad, as it defines "unfair competition" to include "any unlawful, unfair or fraudulent business act or practice." (Bus. & Prof. Code, § 17200.) " '[T]he Legislature . . . intended by this sweeping language to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur. Indeed . . . the section was intentionally framed in its broad, sweeping language, precisely to enable judicial tribunals to deal with the innumerable " 'new schemes which the fertility of man's invention would contrive.' " [Citation.]' " (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 181 [83 Cal.Rptr.2d 548, 973 P.2d 527].) However, although the UCL is broadly written to permit courts to restrain dishonest or unfair business dealings, its scope is not unlimited. "Courts may not simply impose their own notions of the day as to what is fair or unfair. Specific legislation may limit the judiciary's power to declare conduct unfair. If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination. When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." (*Id.* at p. 182.)

The scope of the actual authorization at issue is defined by the statute. Section 1936, by its terms, is limited to "passenger vehicle" rental companies: "(a) For the purpose of this section, the following definitions shall

apply: [¶] (1) 'Rental company' means any person or entity in the business of renting passenger vehicles to the public. [¶] . . . [¶] (10) 'Passenger vehicle' means a passenger vehicle as defined in Section 465 of the Vehicle Code." Vehicle Code section 465 provides: "A 'passenger vehicle' is any motor vehicle, other than a motortruck, truck tractor, or a bus, as defined in Section 233, and used or maintained for the transportation of persons." A "motortruck" is defined by the Vehicle Code as "a motor vehicle designed, used, or maintained primarily for the transportation of property." (Veh. Code, § 410.)

■ While there are similarities between passenger vehicle and motortruck rental companies, we cannot infer that the Legislature authorized the conduct at issue. The power to create and define an exception to the UCL is committed to the Legislature. "[T]he California legislature, not the California courts, is to be the source of any safe harbor exceptions to [Business and Professions Code,] Section 17200." (*Rambus, Inc. v. Infineon Technologies, AG* (E.D.Va. 2004) 304 F.Supp.2d 812, 824.) Courts thus may not create "implied safe harbor[s]." (*Krumme v. Mercury Ins. Co.* (2004) 123 Cal.App.4th 924, 940, fn. 5 [20 Cal.Rptr.3d 485].) ■ Because U-Haul is a motortruck rental company,[2] section 1936, subdivision (n)(2) does not apply to its rental operations. (See *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra*, 20 Cal.4th at pp. 182–183 [the "safe harbor" found in legislation must clearly bar the action or permit the challenged conduct]; *Krumme v. Mercury Ins. Co., supra*, 123 Cal.App.4th at p. 940, fn. 5 ["a safe harbor statute must explicitly prohibit liability for the defendant's acts or omissions."].)

■ We must therefore determine whether Aron has adequately alleged practices governed by the statutes. "If no statute provides a safe harbor, a court must determine whether the challenged conduct is unfair within the meaning of the unfair competition law." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra*, 20 Cal.4th at p. 184.)

### D. *Aron Has Alleged Sufficient Facts to State a Cause of Action Under the UCL*

#### 1. *Unlawful Business Practice*

Aron claims that U-Haul's use of fuel gauges to measure fuel for commercial sale is illegal because California law requires measurements to be made in a manner that ensures their accuracy and reliability. Business and Professions Code section 12020 states: "It shall be unlawful for any person, by himself or through or for another, to use for commercial purposes any

---

[2] This fact was both alleged by Aron in his complaint and conceded by U-Haul.

weight or measure or weighing, measuring or counting instrument, knowing it to be 'incorrect' as this term is defined in subdivision (d) of Section 12500."[3]

Aron alleges that a truck fuel gauge does not meet the statutory requirements as it is not capable of measuring in the units required. This sufficiently alleges an unlawful act.

### 2. *Unfair Business Practice*

Aron alleges in his complaint that U-Haul's scheduled fees and practices force customers to either provide excess fuel in order to avoid fueling fees or be charged such fees, despite the fact that U-Haul incurs no refueling costs. Moreover, because of the inherent inaccuracy of the gas gauge, customers have no option that allows them to avoid either alternative.

U-Haul asserts that such a refueling fee is not unfair, relying on *Schnall v. Hertz Corp.* (2000) 78 Cal.App.4th 1144 [93 Cal.Rptr.2d 439]. In that case, however, the unfairness issue was resolved solely by reliance on the protection of section 1936, subdivision (n)(2), a protection to which U-Haul is not entitled. (*Schnall v. Hertz Corp., supra*, 78 Cal.App.4th at pp. 1160–1161.)

U-Haul also contends that customers who provide excess fuel or incur fueling charges choose to do so at their own discretion, because the charges are disclosed and can be avoided. However, Aron specifically pleads that customers must pay a charge one way or the other; the allegations support a claim that a customer cannot rely on the fuel gauge to avoid the charge or excess refueling as he could if the truck were provided with a full tank. (See *Schnall v. Hertz Corp., supra*, 78 Cal.App.4th at p. 1156.)

Finally, U-Haul asserts that the fact that it incurs no refueling charges is irrelevant to the unfairness analysis, as what it may do with its revenue is of

---

[3] Business and Professions Code section 12500, subdivision (d) states: "As used in this chapter the following terms mean: . . . (d) 'Incorrect' means any instrument which fails to meet all of the requirements of Section 12107."

Business and Professions Code section 12107 states: "The director shall establish tolerances and specifications and other technical requirements for commercial weighing and measuring. In doing so, the director shall adopt, by reference, the latest standards as recommended by the National Conference on Weights and Measures and published in the National Institute of Standards and Technology Handbook 44 'Specifications and Tolerances, and other Technical Requirements for Weighing and Measuring Devices,' except as specifically modified, amended, or rejected by regulation adopted by the director."

These regulations require that the measurements be in liters, gallons, quarts, pints, or binary-submultiples or decimal divisions of the liter or gallon. (National Institute of Standards and Technology, Handbook 44: Specifications, Tolerances, and Other Technical Requirements for Weighing and Measuring Devices (Oct. 2005) §§ 3.30–3.32; Cal. Code Regs., tit. 4, § 4000.)

no concern to its customers. (See *Searle v. Wyndham Internat., Inc.* (2000) 102 Cal.App.4th 1327, 1334–1335 [126 Cal.Rptr.2d 231].) In that case, which concerned hotel room service charges, Wyndham imposed a mandatory charge which the plaintiff alleged unfairly induced him to alter his tipping policies. In contrast, the complaint here concerns a charge that U-Haul defends as being avoidable by the consumer, and thus not part of the standard cost of the service. As Aron has adequately alleged that it is not, in fact, avoidable, *Searle* provides no protection for U-Haul's imposition of a charge for a service it does not provide.

■ On the state of these pleadings, U-Haul's responses do not support the grant of the demurrer. Where, as here, the "pleading states a prima facie case of harm, having its genesis in an apparently unfair business practice, the defendant should be made to present its side of the story." (*Motors, Inc. v. Times Mirror Co.* (1980) 102 Cal.App.3d 735, 740 [162 Cal.Rptr. 543].) Such is the case here.

### 3. *Fraudulent Business Practice*

■ To state a cause of action under consumer protection statutes designed to protect the public from fraudulent or deceptive representations, the plaintiff must demonstrate that " 'members of the public are likely to be deceived.' [Citations.]" (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 211 [197 Cal.Rptr. 783, 673 P.2d 660].) The Second Appellate District of the Court of Appeal has held that "the reasonable consumer standard" applies to actions involving claims under the CLRA and the UCL for unfair or deceptive business practices. (*Consumer Advocates v. Echostar Satellite Corp.* (2003) 113 Cal.App.4th 1351, 1360 [8 Cal.Rptr.3d 22].) According to this standard, "unless the advertisement targets a particular disadvantaged or vulnerable group, it is judged by the effect it would have on a reasonable consumer." (*Lavie v. Procter & Gamble Co.* (2003) 105 Cal.App.4th 496, 506–507 [129 Cal.Rptr.2d 486].)

Aron alleges that U-Haul deceptively misrepresents its $20 "fueling fee" and additional fees for fuel used but not replaced as fees that are used to refuel the returned trucks. He claims that these designations are unfair and misleading because the fuel is not in fact replaced and this fact is not disclosed to the consumer.

U-Haul argues that there is nothing deceptive about calling the fee charged when a customer returns a truck with less fuel than provided a "fueling fee" as there is a clear connection between the fee and whether the customer has performed the "fueling task" of replacing fuel provided by U-Haul and used by the customer. U-Haul also contends that it makes no express or implied

representations suggesting that it refuels returned vehicles, and that what it does with the fuel charges is of no concern to the customers.

■ We find that Aron has alleged facts sufficient to show that U-Haul's representations would be misleading to a reasonable consumer because there is no connection between the imposition of a fee or cost and whether the customer has in fact refueled the vehicle. "A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable." (*Day v. A T & T Corp.* (1998) 63 Cal.App.4th 325, 332–333 [74 Cal.Rptr.2d 55].) Thus, Aron has alleged sufficient facts to state a cause of action for fraudulent business practices under the UCL. This allegation also satisfies the requirements of section 1770, subdivision (a)(5) of the CLRA. That claim is sufficient to permit Aron to proceed with his second cause of action.

### E. *Aron's Remaining Allegations Under the CLRA Are Properly Stricken from the Pleadings*

#### 1. *Deceptive Practices*

Aron alleges that U-Haul violated section 1770, subdivision (a)(4) by using deceptive representations in connection with its $20 "fueling fee" and its charges for used but not replaced fuel. U-Haul contends that there is nothing deceptive or misleading about its fueling practices because it fully discloses the charges in the rental contract, and makes no representations regarding the purpose or use of the charges. However, neither party addresses the central issue—that section 1770, subdivision (a)(4) applies only to claims of deceptive representations and designations of geographic origin.

■ Section 1770, subdivision (a) states: "The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: [¶] . . . [¶] (4) Using deceptive representations or designations of geographic origin in connection with goods or services." To state a claim under section 1770, subdivision (a)(4), therefore, a plaintiff must allege facts that show the deception relates to geographic origin.

■ Assuming for purposes of this argument that Aron would assert that the statutory language of section 1770, subdivision (a)(4) is ambiguous, so that "of geographic origin" should be interpreted to modify only "designations," "we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of

which the statute is a part. [Citations.]" (*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340 [14 Cal.Rptr.3d 857, 92 P.3d 350].) We construe the language in the context of the statute as a whole and the overall statutory scheme, and we give "significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose. [Citation.]" (*Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1063 [103 Cal.Rptr.2d 751, 16 P.3d 166].) "In matters of statutory construction, an interpretation which renders a provision nugatory should be avoided. [Citation.]" (*Olsen v. Breeze, Inc.* (1996) 48 Cal.App.4th 608, 624 [55 Cal.Rptr.2d 818].) Examining the context and statutory scheme of section 1770, subdivision (a)(4), it is clear that the text "of geographic origin" modifies both "deceptive representations" and "designations"; otherwise, the remaining subparts of section 1770, subdivision (a) would be superfluous.

Aron does not, and cannot, allege that U-Haul's fuel charges are related to geographic origin.

### 2. *Unconscionable Business Practices*

Unconscionability is a question of law for the court. (§ 1670.5; *Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 89 [7 Cal.Rptr.3d 267].) Unconscionability has both a procedural and a substantive element. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 [99 Cal.Rptr.2d 745, 6 P.3d 669].) Both elements must be present for a court to invalidate a contract or clause, although the degree to which each must exist may vary. (*Ibid.* ["[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa"].)

The procedural element of unconscionability focuses on two factors: oppression and surprise. (*Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 160 [30 Cal.Rptr.3d 76, 113 P.3d 1100].) " 'Oppression' arises from an inequality of bargaining power which results in no real negotiation and 'an absence of meaningful choice.' " (*A & M Produce Co. v. FMC Corp.* (1982) 135 Cal.App.3d 473, 486 [186 Cal.Rptr. 114].) " 'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." (*Ibid.*)

The substantive element of unconscionability focuses on the actual terms of the agreement and evaluates whether they create " 'overly harsh' " or " 'one-sided' " results as to " 'shock the conscience.' " (*A & M Produce Co. v. FMC Corp., supra,* 135 Cal.App.3d at p. 487; *Kinney v. United HealthCare Services, Inc.* (1999) 70 Cal.App.4th 1322, 1330 [83 Cal.Rptr.2d 348], italics omitted.)

In this case, Aron argues that U-Haul's $20 fueling fee, its additional charges for fuel used but not replaced, and its allegedly illegal measuring system are unconscionable business practices that violate section 1770, subdivision (a)(19). Specifically, Aron claims that he was surprised when U-Haul presented him with a truck with a fuel tank which was less than half full and oppressed by the fueling scheme imposed by U-Haul which only became obvious to Aron when he refueled the truck before returning it. Aron also claims that U-Haul's practice of charging its customers for services that it does not perform and using an illegal measuring device in the course of charging customers for fuel it does not deliver shocks the conscience.

### a. *Procedural unconscionability*

Aron's claim of procedural unconscionability fails on several grounds. First, although Aron may not have expected the truck's fuel tank to be less than full, the actual obligations imposed on him by the contract were clear. U-Haul disclosed the terms of its refueling policy in the rental contract; the surprise he claims arose from his discovery that the fuel gauge was an imprecise means of measurement is not a hidden term of the agreement.

Second, there can be no "oppression" when the customer has meaningful choices. (*Dean Witter Reynolds, Inc. v. Superior Court* (1989) 211 Cal.App.3d 758, 768 [259 Cal.Rptr. 789] ["[A]ny claim of 'oppression' may be defeated if the complaining party has reasonably available alternative sources of supply from which to obtain the desired goods or services free of the terms claimed to be unconscionable"].) In this case, customers may choose to rent from another truck rental company.

### b. *Substantive unconscionability*

Aron's claim of substantive unconscionability also fails. "The phrases 'harsh,' 'oppressive,' and 'shock the conscience' are not synonymous with 'unreasonable.' Basing an unconscionability determination on the reasonableness of a contract provision would inject an inappropriate level of judicial subjectivity into the analysis. 'With a concept as nebulous as "unconscionability" it is important that courts not be thrust in the paternalistic role of intervening to change contractual terms that the parties have agreed to merely because the court believes the terms are unreasonable. The terms must shock the conscience.' [Citations.]" (*Morris v. Redwood Empire Bancorp* (2005) 128 Cal.App.4th 1305, 1322–1323 [27 Cal.Rptr.3d 797].) U-Haul's $20 fueling fee, additional charges for fuel used but not replaced, and allegedly illegal measuring system do not shock the conscience as a matter of law.

## DISPOSITION

We reverse the judgment and remand for proceedings consistent with this opinion. Aron is to recover his costs on appeal.

Johnson, Acting P. J., and Woods, J., concurred.

Respondents' petition for review by the Supreme Court was denied January 3, 2007, S148020. Corrigan, J., did not participate therein.