Filed 11/15/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| GARY SEPANOSSIAN, | B319260 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20STCV13996) |
| v. | |
| NATIONAL READY MIX COMPANY, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Amy D. Hogue, Judge. Affirmed in part, reversed in part, and remanded with directions.

Price Armstrong and Nicholas W. Armstrong for Plaintiff and Appellant.

Covington & Burling, Sonya D. Winner, Ashley M. Simonsen and Alaxander L. Schultz for Defendant and Respondent.

———————————

# INTRODUCTION

Gary Sepanossian, dba G.S. Construction (Sepanossian), individually and as class representative, filed a class action against National Ready Mix Concrete Co., Inc. (Ready Mix),[1] alleging Ready Mix charged its customers an "energy" fee and an "environmental" fee "wholly untethered to any actual cost for 'energy' or 'environmental' issues" that Ready Mix instead "recognize[s] as profit." The complaint alleges causes of action for (1) violation of California's Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200 et seq.[2]) under the fraudulent and unfair business practices prongs; (2) breach of contract; and (3) "unjust enrichment."

After Ready Mix answered the complaint, Sepanossian filed a motion for class certification. The trial court granted class certification, but expressed doubts about Sepanossian's legal claims and invited the parties to present a motion for judgment on the pleadings to address the merits before class notice. The parties agreed to do so, and Ready Mix subsequently filed a motion for judgment on the pleadings, which the trial court granted on the UCL and unjust enrichment causes of action. We reverse because Sepanossian alleged facts sufficient to state a cause of action under the UCL, but affirm dismissal of the unjust enrichment cause of action.

---

[1]     Sepanossian sued Ready Mix as "National Ready Mix Company, Inc.," which Ready Mix's brief notes was incorrect. Ready Mix advances no argument this error affects our analysis on appeal.

[2]     Statutory references are to the Business and Professions Code unless otherwise indicated.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

Ready Mix sells mixed concrete to small businesses for construction projects. Sepanossian operates a construction business in Encino, California. Sepanossian and the class he represents are customers of Ready Mix who pay Ready Mix a "set rate" for its concrete products. To each sale, Ready Mix adds an "energy" fee and an "environmental" fee separate from the set rate.[4] These fees are uniform and do not correlate to or fluctuate in any way with any actual energy or environmental costs incurred by Ready Mix or the size of the order. The complaint alleges the "energy" fee has no relationship to Ready Mix's fuel or energy costs and the "environmental" fee does not relate to any environmental costs incurred by Ready Mix. Sepanossian further alleges the fees are recognized by Ready Mix as profit. The energy and environmental fee amounts are separately itemized on invoices and disclosed to customers, but no further explanation or information about the nature of the fees is provided. According to the quotes and invoices judicially noticed by the trial court, the environmental fees and energy fees are generally approximately $30 each per delivery. The gravamen of Sepanossian's complaint is not that class members did not know

---

[3]     On review from a motion for judgment on the pleadings, "we accept as true all material allegations in the complaint." (*National Shooting Sports Foundation, Inc. v. State of California* (2018) 5 Cal.5th 428, 432 (*Sports Foundation*).)

[4]     The trial court took judicial notice of four exemplar quotes and invoices reflecting those fees. The parties agreed such judicial notice was proper so Sepanossian did not have to file an amended complaint attaching these documents.

the amount of these charges, but rather that the terms environmental fee and energy fee were misleading.

In April 2020 Sepanossian filed a class action complaint against Ready Mix on behalf of himself and all others similarly situated, seeking restitution, injunctive relief, and damages. Sepanossian's complaint alleges in relevant part that, in connection with its sales of concrete, Ready Mix fraudulently, deceptively, and unfairly added "energy" and "environmental" fees above the set rate that are unrelated to Ready Mix's actual energy or environmental costs, and that Ready Mix was unjustly enriched by these practices.

The complaint alleges Ready Mix's practice of charging customers for "energy" and "environmental" fees is likely to deceive reasonable customers into believing these are legitimate charges directly related to actual costs incurred by Ready Mix in delivering its orders of ready-mixed concrete. The complaint further alleges that Sepanossian and class members were induced to purchase the concrete and pay the fees because they were misled by the labels.[5] Sepanossian also alleges, "Plaintiff

_____

[5]    For example, as to the UCL claim, the complaint alleges Ready Mix's "fraudulent acts" include "(a) Representing, through the commonly understood . . . term 'energy' and 'environmental' fees" that such fees were "implemented, calculated, charged, and collected to offset Ready Mix's actual or increased fuel costs. This representation was made uniformly on the form contracts at issue and invoices. Plaintiff and class members relied upon this understood meaning, as used by Ready Mix, in entering the contract and paying the fee. This representation was material as Plaintiff and class members would not have paid the 'energy' and 'environmental' fees had they known [they were] simply a profit-enhancement tool. This representation is false as" such fees are "not related to or used to offset Ready Mix's actual or increased

4

and class members would not have entered into contracts with Ready Mix and would not have paid the fees at issue had they known the truth about the 'energy' and 'environmental' fees and had not been subject to Ready Mix's misrepresentations and omissions."

Ready Mix answered the complaint, and the parties proceeded to class certification.

In July 2021 the trial court certified the two proposed classes (an "energy fee class" and an "environmental fee class") but expressed "serious questions regarding the merits of Plaintiff's claims." At the hearing, the court stated that although it could not reach the merits on the motion for class certification, its ruling "certainly signal[s] pretty strongly that I think [Ready Mix is] right." The court invited the parties to present a dispositive motion on the merits before undertaking the expense of class notice, and suggested a motion for judgment on the pleadings, with the relevant invoices incorporated, as an alternative to a summary judgment motion. The parties subsequently conferred and stipulated to do so, and in September 2021 Ready Mix filed a motion for judgment on the pleadings and an unopposed request for judicial notice of the quotes and invoices reflecting the challenged fees.

---

costs of fuel. Ready Mix made these representations in order to, and with the effect of, inducing Plaintiff and class members to pay the fee." The complaint contains substantially similar allegations under an omissions theory.

In October 2021 the trial court granted Ready Mix's motion for judgment on the pleadings as to the UCL and unjust enrichment causes of action. The trial court ruled that "the terms 'environmental' and 'energy,' standing alone, are at best ambiguous and there is no allegation Ready Mix further promised or represented how it would use the fees," thus, as a matter of law, they were not misleading or deceptive. It further ruled that because Ready Mix clearly disclosed the amount of fees as part of the total cost, the practice as a matter of law was not unfair. With regard to unjust enrichment, the court reasoned that because there was an express contract between the parties covering the fees (i.e., the form contracts listing the fees), and the contract was not procured by fraud or otherwise unenforceable or ineffective, Sepanossian could not assert a claim for restitution based on unjust enrichment.

On December 22, 2021 Sepanossian voluntarily dismissed the remaining breach of contract cause of action. On December 29, the trial court dismissed the entire action with prejudice.[6]

Sepanossian timely appealed.[7]

---

[6] The trial court issued an "Order re Dismissal," which is an appealable final judgment. (See *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 699 ["'[A]n order of dismissal is to be treated as a judgment for the purposes of taking an appeal when it finally disposes of the particular action and prevents further proceedings as effectually as would any formal judgment.'"].)

[7] Sepanossian does not appeal the dismissal of the contract claim.

# DISCUSSION

A. *Standard of Review*

"'A judgment on the pleadings in favor of the defendant is appropriate when the complaint fails to allege facts sufficient to state a cause of action. [Citation.] A motion for judgment on the pleadings is equivalent to a demurrer and is governed by the same de novo standard of review.' [Citation.] 'All properly pleaded, material facts are deemed true, but not contentions, deductions, or conclusions of fact or law . . . .' [Citation.] Courts may consider judicially noticeable matters in the motion as well." (*People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777; see generally Code Civ. Proc., § 438.) Our review is de novo because the trial court's ruling on a motion for judgment on the pleadings "resolves a mixed question of law and fact that is predominantly one of law, viz., whether or not the factual allegations that the plaintiff makes are sufficient to constitute a cause of action." (*Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 515.)

"A trial court's determination of a motion for judgment on the pleadings accepts as true the factual allegations that the plaintiff makes. [Citations.] In addition, it gives them a liberal construction. [Citations.] [¶] An appellate court's consideration of the ensuing determination by the trial court involves the same acceptance and liberal construction of the factual allegations in question. [Citations.]" (*Gerawan Farming, Inc. v. Lyons, supra,* 24 Cal.4th at pp. 515-516; accord, *Aron v. U-Haul Co. of California* (2006) 143 Cal.App.4th 796, 802 (*Aron*).)

7

B.     *The UCL*

The purpose of the UCL ""'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.'""" (*California Medical Association v. Aetna Health of California Inc.* (2023) 14 Cal.5th 1075, 1085 (*California Medical Association*); accord, *McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 954; *Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 949.)  "'Through the UCL a plaintiff may obtain restitution and/or injunctive relief against unfair or unlawful practices.'" (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1144.)  The UCL is broad in scope (*Kasky,* at p. 949), and defines "'unfair competition'" to mean and include "any unlawful, unfair or fraudulent business act or practice" (§ 17200).  "Because the statute is framed in the disjunctive, a business practice need only meet one of the three criteria to be considered unfair competition," and a cause of action under the UCL may be established ""'independent of any contractual relationship between the parties.'"" (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1471 (*McKell*).)

"To state a cause of action under consumer protection statutes designed to protect the public from fraudulent or deceptive representations, the plaintiff must demonstrate that "'members of the public are likely to be deceived.'"" (*Aron, supra*, 143 Cal.App.4th at p. 806; accord, *Morgan v. AT&T Wireless Services, Inc.* (2009) 177 Cal.App.4th 1235, 1255 [a "fraudulent" business practice under the UCL "is one that is likely to deceive members of the public"].)  We apply the "reasonable consumer" standard to actions involving claims under the UCL for deceptive or unfair business practices.  (*Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1380 (*Klein*); *Aron*, at p. 806; *Consumer*

*Advocates v. Echostar Satellite Corp.* (2003) 113 Cal.App.4th 1351, 1360.)

Under the reasonable consumer standard, whether a business practice is deceptive under the "'fraudulent'" prong of the UCL "'is based on the likely effect such practice would have on a reasonable consumer.'" (*Klein, supra,* 202 Cal.App.4th at p. 1380; accord, *Lavie v. Procter & Gamble Co.* (2003) 105 Cal.App.4th 496, 508 [whether an advertisement or business practice violates the UCL is measured "by the likely effect on the normally credulous consumer"].) "This is determined by considering a reasonable consumer who is neither the most vigilant and suspicious . . . nor the most unwary and unsophisticated, but instead is 'the ordinary consumer within the target population.'" (*Chapman v. Skype Inc.* (2013) 220 Cal.App.4th 217, 226 (*Chapman*).) "'"Likely to deceive" for purposes of the UCL indicates "it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" (*Id.* at p. 226.) A claim under the UCL "'may be based on representations to the public which are untrue, and "'also those which may be accurate on some level, but will nonetheless tend to mislead or deceive. . . . A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under'" the UCL.'" (*Klein,* at p. 1380; accord, *McKell, supra,* 142 Cal.App.4th at p. 1471.)

Whether consumers are likely to be deceived is generally a question of fact that can be decided at the pleadings stage "only if the facts alleged in the complaint, and facts judicially noticed, compel the conclusion as a matter of law that consumers are not

9

likely to be deceived." (*Chapman, supra,* 220 Cal.App.4th at pp. 226-227; accord, *Klein, supra,* 202 Cal.App.4th at p. 1381 ["'"[U]nless we can say as a matter of law that contrary to the complaint's allegations, members of the public were *not* likely to be deceived or misled by [the defendant's alleged conduct], we must hold that [plaintiffs] stated a cause of action."'"].)

With regard to the "'unfair'" prong of the UCL, "a business practice is 'unfair' if (1) the consumer injury is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) the injury could not reasonably have been avoided by consumers themselves." (*Klein, supra,* 202 Cal.App.4th at p. 1376, quoting *Camacho v. Automobile Club of Southern California* (2006) 142 Cal.App.4th 1394, 1403; accord, *Davis v. Ford Motor Credit Co. LLC* (2009) 179 Cal.App.4th 581, 598 (*Davis*).) "Whether a practice is . . . unfair is generally a question of fact . . . which usually cannot be [decided] on demurrer." (*Linear Technology Corp. v. Applied Materials, Inc.* (2007) 152 Cal.App.4th 115, 134-135.)

C.     *Sepanossian Has Stated a Claim Under Both the "Fraudulent" and "Unfair" Prongs of the UCL*
       1.     *"Fraudulent" prong of the UCL*
Sepanossian alleged that by adding "energy" and "environmental" fees to each order on top of the set rate for its concrete product sales, Ready Mix fraudulently deceived customers into believing they were being charged fees bearing some relation to energy-related or environmental-related costs borne by Ready Mix. Specifically, Sepanossian alleged, "[i]n truth, Ready Mix's charges for 'energy' and 'environmental' fees were not designed to cover anything related to additional 'energy'

10

costs or any 'environmental' fee.  The amount of these charges are arbitrary and are simply designed to increase the agreed base price and generate extra profit at its customer's expense." Sepanossian alleged Ready Mix's conduct deceptively and unfairly misleads consumers because the listed fees did not in fact, "in intent or practice," relate to any fuel, energy or environmental costs incurred or anticipated by Ready Mix, and there was no way for consumers to reasonably avoid the injury because the fees were mandatory.

At the pleading stage, we cannot conclude, as a matter of law, that consumers are not likely to be deceived in the manner alleged.  Sepanossian alleged facts which, if true, may reveal that members of the public believed the fees Ready Mix charged them had some nexus to energy or environmental costs, when in fact the listed fees had no such relationship and were solely added to increase profits to Ready Mix.

*Aron, supra,* 143 Cal.App.4th 796, a case this court decided that was not cited by either party, dealt with the same UCL provisions at issue here.  There the plaintiff alleged that a "fueling fee" imposed by U-Haul when customers returned a rental truck with less fuel than originally provided was an unfair and misleading designation "because the fuel is not in fact replaced [before the next truck rental] and this fact is not disclosed to the consumer." (*Id.* at p. 806.)  We reversed the trial court's judgment on the pleadings in U-Haul's favor, rejecting U-Haul's arguments that "there is nothing deceptive about calling the fee charged when a customer returns a truck with less fuel than provided a 'fueling fee.'"  *Aron* further rejected U-Haul's arguments that "it makes no express or implied representations suggesting that it refuels returned vehicles, and that what it does

11

with the fuel charges is of no concern to the customers." (*Ibid*.) *Aron* determined the facts alleged were sufficient to show that calling a charge a "fueling fee" when a truck rental customer returns with less fuel than provided "would be misleading to a reasonable consumer because there is no connection between the imposition of a fee or cost and whether the customer has in fact refueled the vehicle." (*Id.* at p. 807.) *Aron* concluded the plaintiff alleged sufficient facts to state a cause of action for fraudulent business practices under the UCL. (*Ibid*.)

Here, similar to *Aron*, Sepanossian alleged facts sufficient to show Ready Mix's fees are misleading to a reasonable consumer because there is no connection between the imposition of Ready Mix's "energy" or "environmental" fees and whether Ready Mix is in fact charging its customers for energy or environmental costs. "'"A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable."'" (*Klein, supra,* 202 Cal.App.4th at p. 1380.) The invoices clearly list the "energy" and "environmental" fees and accurately reflect the dollar amount charged, but the fees are presented to a consumer in such a way that it is probable a consumer would be misled or deceived into believing it was being charged bona fide fees for energy or environmental costs borne by Ready Mix. In other words, a reasonable consumer would likely be surprised to learn that a charge expressly identified as an "energy" or "environmental" fee, added on top of the set rate for a concrete purchase, had no actual relationship of any kind to Ready Mix's energy or environmental costs and was pure profit.

12

Ready Mix maintains that Sepanossian failed to state a claim under the fraudulent prong of the UCL because "the terms 'energy fee' and 'environmental fee,' standing alone, do not constitute affirmative representations that the amounts charged are (or are not) exclusive of profit." Ready Mix contends there is no actionable misrepresentation because "a reasonable consumer is not likely to construe [Ready Mix]'s fee labels, standing alone, as unequivocal representations that the amounts charged were wholly tethered to [its] costs and not the source of any profit." As noted above, *Aron* rejected a similar argument by U-Haul at pages 806 to 807.

In all events, Ready Mix relies on *Wayne v. Staples, Inc.* (2006) 135 Cal.App.4th 466 (*Wayne*), a case this court decided on summary judgment. In *Wayne*, the plaintiff in a putative class action alleged Staples's parcel shipping order form was deceptive under the False Advertising Act (§ 17500 et seq.)[8] because the form failed to properly disclose Staples's 100 percent profit or markup on the sale of optional "declared value coverage." (*Id.* at p. 473.) The form indicated such coverage would be provided through the carrier (UPS), not Staples, and informed customers they could instead use an independent company. It further stated, "'Please note that we may surcharge the cost of this product as an administrative expense, for services such as processing of potential claims and related services.'" (*Id.* at

---

8    The UCL incorporates by reference the False Advertising Act. (See § 17200 [UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."].)

13

p. 483.)  Staples did not dispute it automatically marked up the cost of the coverage on each purchase without regard to actual administrative expense.  (*Ibid*.)  The trial court granted Staples's motion for summary judgment, and this court affirmed, concluding that "[i]n light of Staples's clear disclosure of the actual price it would charge its customers for declared value coverage prior to any purchase, the trial court properly concluded any ambiguity in the order form as to whether the amount charged includes a 'surcharge' or profit for Staples was not misleading or deceptive."  (*Id.* at p. 484.)

Ready Mix also relies on *Searle v. Wyndham International, Inc.* (2002) 102 Cal.App.4th 1327, 1334 (*Searle*), which affirmed a demurrer to plaintiff's UCL claims brought against a hotel. *Searle* ruled it was not deceptive or unfair for the hotel not to specify that a clearly stated 17 percent hotel "service charge" on room service orders was paid directly to servers.  (*Searle*, at p. 1334.)  According to *Searle*, guests had no legitimate interest in how this charge was distributed and were "given both clear notice the [room] service being offered comes at a hefty premium and the freedom to decline the service."  (*Ibid*.)

*Wayne* and *Searle* are distinguishable from the facts alleged in Sepanossian's complaint.  Sepanossian's central allegation is that the energy and environmental fees charged by Ready Mix are misleadingly named, have no relation "in intent or practice" to any actual energy or environmental costs, and are wholly profit for which customers receive nothing in return (since, as the complaint alleges, customers pay for the concrete with the agreed-upon "set rate").  By contrast, in *Searle*, the plaintiffs did not allege the service charge was misleadingly labeled, and there was no allegation or contention the "service

14

charge" for room service was unrelated to the service actually received. The *Searle* plaintiffs only complained that the hotel did not disclose how it allocated the service charge, and, in those circumstances, the court properly concluded that a customer "has no legitimate interest in what the hotel does with the service charge." (*Searle, supra,* 102 Cal.App.4th at p. 1334.) In *Searle*, the service charge was not fraudulent (or unfair) because it was a bona fide service charge for which plaintiffs received something in return.

Similarly, in *Wayne*, the core allegation was essentially that customers paid a steep markup for shipping insurance coverage and that the size of the markup was undisclosed, not that the "declared value coverage" charge was misleadingly labeled or unrelated to actual insurance coverage. Further, the order form in *Wayne* disclosed that the "declared value coverage" charge could be surcharged to cover administrative expenses. That is, it expressly disclosed the charge for coverage could be surcharged and that such surcharge was intended to cover (but not limited to) anticipated expenses for processing potential claims and related services. By contrast, Ready Mix's quotes and invoices—attached to its motion for judgment on the pleadings— do not contain comparable disclosures regarding the environmental and energy fees it charges. *Wayne* also was decided on summary judgment, not judgment on the pleadings, with discovery regarding the nature of the charges and their relation to actual expenses.[9]

---

[9] Ready Mix relies on several federal cases applying California law. "We, of course, are not bound by federal decisions on matters of state law." (*Haynes v. EMC Mortgage Corp.* (2012) 205 Cal.App.4th 329, 335; accord, *Bank of Italy National Trust &*

15

More fundamentally, Ready Mix's framing ignores that clear disclosure of the amount of a particular charge on a customer's invoices does not foreclose the possibility that the label attached to that charge—which is fully within its control—could mislead a reasonable consumer. Reasonable consumers are entitled to infer that the descriptive name attached to a particular fee they are being charged has some connection to the fee unless otherwise indicated. If the terms "energy" and "environmental" had been defined, or their function and intent described in the quotes and invoices, a UCL cause of action under the fraudulent prong may have failed at the pleadings stage. But here, where we accept as true Sepanossian's allegations that consumers are not informed the fees they pay have nothing to do with actual energy or environmental costs, consumers receive nothing in return for payment of those fees, and the fees are instead solely intended for Ready Mix to increase its profit from the transaction above the set rate, the complaint properly stated a claim. Under these circumstances, we cannot ""'say as a matter of law that contrary to the complaint's allegations, members of the public were not likely to be deceived or misled by'"" Ready Mix's alleged conduct. (*Klein, supra,* 202 Cal.App.4th at p. 1381.)

---

*Savings Association v. Bentley* (1933) 217 Cal. 644, 653 [noting a holding of federal court on California law "would not be binding or conclusive on the courts of this state"].) Similarly, we are not bound by federal court decisions decided under the consumer protection statutes of other states that Sepanossian cites.

2. *"Unfairness" prong of the UCL*

Sepanossian has also adequately alleged Ready Mix's energy and environmental fees are unfair under the UCL. The complaint alleges and we must accept as true that (1) such fees are automatically added to every concrete purchase, thus causing substantial injury to customers; (2) the fees provide no countervailing benefit to customers; and (3) the fees were mandatory and unavoidable, thus there was no way for customers to reasonably avoid the injury because if they wanted to purchase concrete from Ready Mix, they had to pay the fees. (See *Davis, supra,* 179 Cal.App.4th at pp. 597-598 [to adequately allege unfairness, "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided"].)

Ready Mix contends that businesses do not engage in unfair conduct under the UCL by charging a fee when a consumer is given the freedom to avoid the fee. Relying on *Shvarts v. Budget Group, Inc.* (2000) 81 Cal.App.4th 1153, 1159-1160, Ready Mix argues Sepanossian could have avoided the injury alleged because the fees at issue were disclosed before contracting. *Shvarts* held that a car rental agency's per-gallon charges for replacing fuel were "avoidable" and did not violate the UCL where three payment options and the agency's dollar-per-gallon rate were "clearly printed" in the rental agreement and statutory law protected rental companies' ability to "'charge for an item or service provided in connection with a particular rental transaction if the renter could have avoided incurring the charge by choosing not to obtain or utilize the optional item or service.'" (*Id.* at p. 1158 [affirming order of dismissal after sustaining

17

demurrer without leave to amend].) However, the fees in that case were both clearly disclosed and optional for the company's customers: Budget customers could rent a car from Budget yet avoid its allegedly inflated per-gallon rate by simply buying replacement fuel elsewhere.

Here, Ready Mix customers cannot buy concrete from it while avoiding being charged the energy and environmental fees. On a motion for judgment on the pleadings we must accept as true Sepanossian's allegation the fees were unavoidable for customers who wished to purchase concrete from Ready Mix. (See *Sports Foundation, supra*, 5 Cal.5th at p. 432 ["we accept as true all material allegations in the complaint"]; see also *Aron, supra,* 143 Cal.App.4th at p. 805 [where plaintiff "specifically pleads that customers must pay a charge one way or the other," such allegations support a claim under the unfairness prong of the UCL that a customer cannot avoid the charge].)

Ready Mix also cites *Searle, supra,* 102 Cal.App.4th at page 1334, for the proposition that "clear notice" and "the freedom to decline the service" defeat a claim of unfairness under the UCL. But with regard to the imposition of the misleadingly labeled fees here, "[a]s [Sepanossian] has adequately alleged that [such fees are] not, in fact, avoidable, *Searle* provides no protection for [Ready Mix's] imposition of a charge for a service it does not provide." (*Aron, supra,* 143 Cal.App.4th at pp. 805-806 [rejecting U-Haul's assertion that "the fact that it incurs no refueling charges is irrelevant to the unfairness analysis"].)

Accordingly, the complaint stated a cause for violation of the UCL under both the fraudulent and unfairness prongs.

18

D.   *Judgment on the Pleadings on the Unjust Enrichment Cause of Action Was Appropriate*

Sepanossian's complaint states the third cause of action for "unjust enrichment" is pleaded "in the alternative" and "[t]o the extent necessary." The cause of action incorporates all preceding allegations by reference and further alleges: "By charging and collecting 'energy' and 'environmental' fees which it knew to not be justified by any fuel cost in incurred, by suppressing and misrepresenting material facts (including that it would charge 'energy' and 'environmental' fees that were unrelated to its actual or increased fuel costs), and by engaging in other wrongful and unlawful conduct as set out herein, Ready Mix obtained a benefit, in the form of money, which properly belongs to the putative class. The benefit conferred by the putative class was non-gratuitous and Ready Mix realized value from this benefit. . . . [¶] Due to Ready Mix's conduct, it would be unjust for Ready Mix to retain the benefit bestowed by Plaintiff and the class members at the expenses of Plaintiff and the class members."

As an initial matter, "[t]here is no cause of action in California labeled 'unjust enrichment.'" (*City of Oakland v. Oakland Raiders* (2022) 83 Cal.App.5th 458, 477 (*Oakland*).) Rather, an unjust enrichment claim is grounded in equitable principles of restitution. (See *Hirsch v. Bank of America* (2003) 107 Cal.App.4th 708, 721 (*Hirsch*); see also *Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1370 (*Durell*) ["Unjust enrichment is synonymous with restitution."].) Unjust enrichment is sometimes considered ""'a general principle, underlying various legal doctrines and remedies,'" rather than a remedy itself." (*Melchior v. New Line Productions, Inc.* (2003) 106 Cal.App.4th 779, 793.)

19

Unjust enrichment is generally an inapplicable basis for restitution where the parties have an enforceable express contract, however, "restitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason," or "where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct." (*Durell, supra,* 183 Cal.App.4th at p. 1370.) "Common law principles of restitution require a party to return a benefit when the retention of such benefit would unjustly enrich the recipient; a typical cause of action involving such remedy is 'quasi-contract.'" (*Munoz v. MacMillan* (2011) 195 Cal.App.4th 648, 661; see *Ghirardo v. Antonioli* (1996) 14 Cal.4th 39, 51 ["Under the law of restitution, an individual may be required to make restitution if he is unjustly enriched at the expense of another."].)

Thus, Sepanossian's "unjust enrichment" claim "does not properly state a cause of action." (*Levine v. Blue Shield of California* (2010) 189 Cal.App.4th 1117, 1138.) Because Sepanossian does not dispute there were express form contracts in this case, he cannot assert a quasi-contract claim for restitution based on unjust enrichment. "Although a plaintiff may plead inconsistent claims that allege both the existence of an enforceable agreement and the absence of an enforceable agreement, that is not what occurred here. Instead, [Sepanossian's] breach of contract claim pleaded the existence of . . . enforceable agreement[s] and [his] unjust enrichment claim did not deny the existence or enforceability of [those] agreement[s]. [Sepanossian is] therefore precluded from asserting a quasi-contract claim under the theory of unjust enrichment." (*Klein, supra,* 202 Cal.App.4th at pp. 1389-1390.)

20

More fundamentally, "[b]ecause we have found that [Sepanossian's] remedies at law are adequate" (i.e., his count alleged under the UCL), a separate claim for restitution is unnecessary. (*Collins v. eMachines, Inc.* (2011) 202 Cal.App.4th 249, 260 (*Collins*) [on review of a successful motion for judgment on the pleadings, where appellate court determined plaintiffs stated valid claims under the UCL, Consumers Legal Remedies Act, and fraud, "a claim for restitution, alleging that [defendant] has been unjustly enriched by its fraud, is unnecessary"].) "This conclusion follows from the general principle of equity that equitable relief (such as restitution) will not be given when the plaintiff's remedies at law are adequate." (*Id.* at p. 260.)

Here, the gravamen of Sepanossian's unjust enrichment claim is that Ready Mix was unjustly enriched by customers paying fees that were fraudulent and unfair under the UCL, and that such customers are entitled to recover those fees from Ready Mix. The unjust enrichment claim merely incorporates the allegations, derivative of the UCL claim, that Ready Mix received a financial advantage—money obtained from misleadingly named fees charged to its customers—which it unjustly retained at their expense. Restitution is already an available remedy under the UCL cause of action, within the broad equitable discretion of the trial court. (See § 17203 [restitution is available "to restore to any person in interest any money or property . . . which may have been acquired by means of such unfair competition"]; see also *In re Tobacco Cases II* (2015) 240 Cal.App.4th 779, 790.) Thus, a separate claim is unnecessary for Sepanossian to recover restitution. "In light of the adequate legal remedies, we conclude the complaint does not state a claim for restitution based on unjust enrichment." (*Collins, supra,* 202 Cal.App.4th at p. 260.)

21

## DISPOSITION

The order of dismissal is reversed.  The order granting the motion for judgment on the pleadings is also reversed, and the trial court is directed to enter a new order denying the motion on the UCL cause of action and granting it on the unjust enrichment cause of action.  The parties are to bear their own costs on appeal.


MARTINEZ, J.

We concur:


PERLUSS, P. J.


SEGAL, J.